# UNITED STATES DISTRICT COURT

for the
District of New Mexico

FILED

United States District Court
Albuquerque, New Mexico

Mitchell R. Elfers
Clerk of Court

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

The Person of
Miranda ETCITTY, year of birth 1986

)
)
)
)
)
)

Case No.    24-MR-2096

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Attachment A

located in the _____ District of _____ New Mexico _____ , there is now concealed *(identify the person or describe the property to be seized)*:

Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1153 | Crimes committed in Indian Country |
| 18 U.S.C. § 113(a)(6) | Assault resulting in serious bodily injury |

The application is based on these facts:
See attached affidavit, incoporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Lorraine Hardy, Special Agent
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ Telephone and email _____ *(specify reliable electronic means)*.

Date: _____ November 12, 2024 _____

_____
*Judge's signature*

City and state: _____ Farmington, New Mexico _____

B. Paul Briones, United States Magistrate Judge
_____
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF:<br>The Person of<br>Miranda ETCITTY, year of birth 1986 | Case No. _____ |

**AFFIDAVIT IN SUPPORT OF AN**
**APPLICATION FOR A SEARCH WARRANT**

I, Lorraine Hardy, a special agent (SA) with the Federal Bureau of Investigation (FBI)

being duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application under Rule 41 of the Federal

Rules of Criminal Procedure for a warrant to search the person of Miranda Etcitty (hereinafter

referred to as ETCITTY), year of birth 1986, for the purpose of obtaining deoxyribonucleic

acid (DNA) by collecting oral (buccal) swab samples according to the standard practices and

procedures employed by the FBI for DNA testing and comparison. Based on the facts set forth

in this affidavit, there is probable cause to believe that ETCITTY violated federal criminal

statutes, including but not limited to 18 U.S.C. § 1153, crimes committed in Indian Country

and 18 U.S.C. § 113(a)(6) assault resulting in serious bodily injury. Based upon the

investigation there is evidence to believe ETCITTY's DNA may be found on a Springfield

Hellcat 9mm pistol collected as evidence in this criminal investigation. As explained below,

probable cause exists to collect a DNA sample from ETCITTY via buccal swab may serve to

inculpate or exculpate ETCITTY.

2.      I am currently serving as an FBI Special Agent assigned to the FBI,

Albuquerque Division, Farmington Resident Agency, where I primarily investigate crimes that

1

occur in Indian Country to include homicide, aggravated assault, child sexual assault, kidnapping and rape. I have been with the FBI for approximately five years. I have received on the job training from other experienced agents, detectives, Indian Country criminal investigators, and tribal police officers. My investigative training and experience includes, but is not limited to, processing crime scenes, conducting surveillance, interviewing subjects, targets, and witnesses, writing affidavits for and executing search and arrest warrants, examining cellular telephones; managing confidential human sources and cooperating witnesses/defendants, serving subpoenas, collecting and reviewing evidence, and analyzing public records.

3.      As part of my training and experience, I have had the opportunity to collect and evaluate forensic evidence, like DNA, for evidentiary value. I also have training and experience in the proper collection, packaging, and dissemination of DNA evidence.

4.      This affidavit is based upon information reported to me by other federal, state, and local law enforcement officers during their official duties. Throughout this affidavit, reference will be made to law enforcement officers. Law enforcement officers are those federal, state, and local law enforcement officers who have directly participated in this investigation. This affidavit is also based upon information gained from interviews with cooperating citizen witnesses, whose reliability is established separately herein.

5.      This affidavit is intended to show there is probable cause for the requested search warrant and does not set forth all of my knowledge about this matter. The statements in this affidavit are based on my personal knowledge, information that I have received from other law enforcement personnel, and from persons with knowledge regarding relevant facts. Because this affidavit is being submitted for the limited purpose of securing a search warrant,

2

I have not included each and every fact known to me concerning this investigation. I have set forth facts that I believe are sufficient to establish probable cause to obtain the requested warrant.

## RELEVANT STATUTES

6.      This investigation concerns alleged violations of certain activities relating to assault resulting in serious bodily injury as follows:

a.      Title 18 U.S.C. § 1153 - Federal courts have jurisdiction exclusive of the states over offenses enumerated in the section when committed by a tribal Indian against the person or property of another tribal Indian or other person in Indian country. *United States v. John*, 437 U.S. 634 (1978).

b.      Title 18 U.S.C.  § 113(a)(6) - Whoever, within the special maritime and territorial jurisdiction of the United States, is guilty of an assault resulting in serious bodily injury shall be punished as follows: by a fine under this title or imprisonment for not more than ten years, or both.

## PROBABLE CAUSE

7.      On or about August 4, 2024, the Farmington Resident Agency of the FBI was notified by Navajo Nation Department of Criminal Investigations (NNDCI) a woman (hereinafter referred to as JANE DOE), year of birth 1965 and a male (hereinafter referred to as JOHN DOE), were struck and run over by a motor vehicle being operated by Miranda Etcitty (hereinafter referred to as ETCITTY), in Rattlesnake, New Mexico. JANE DOE and JOHN DOE were taken to Northern Navajo Medical Center (NNMC) in Shiprock and then flown to the University of New Mexico Hospital (UNMH) in Albuquerque for treatment of their injuries.

8.     ETCITTY fled the scene and was not located by law enforcement that day. The following day, ETCITTY contacted NNDCI and voluntarily agreed to come in for an interview.

9.     On August 5, 2024, ETCITTY was interviewed by law enforcement. ETCITTY stated the prior day was her birthday, so she went to her mother, JANE DOE's residence (hereinafter referred to as the RESIDENCE), to spend ETCITTY'S birthday with family. JOHN DOE is ETCITTY'S brother who also lives at the RESIDENCE with JANE DOE. Also present were ETCITTY's aunt (hereinafter referred to as L.D.), year of birth 1970, L.D.'s husband, ETCITTY's brother (hereinafter referred to as E.E.), year of birth 1992, and EE's girlfriend (hereinafter referred to as A.H.), year of birth 1997.

10.     During the interview, ETCITTY stated she has had previous history with E.E., but recently they have been getting along "ok."

11.     On the day of the incident, ETCITTY stated that E.E. left to go get ETCITTY a birthday cake. When E.E.  returned, he appeared intoxicated from drinking alcohol and had a birthday cake that had the word "Murder" written on it in black.

12.     According to ETCITTY, E.E. began talking aggressively to ETCITTY and mentioned something about murder. ETCITTY told E.E. to stop and E.E. became quiet.

13.     After the birthday party ETCITTY stated she drove JOHN DOE, E.E., and A.H. to get more alcohol to drink. As they were leaving Rattlesnake, E.E. pulled up his shirt and showed ETCITTY a green colored holster and a handgun. E.E. asked ETCITTY if she wanted anyone dead and if she wanted to kill someone. ETCITTY said the situation made her uneasy. ETCITTY said she believed JOHN DOE and A.H. were uneasy as well.

14.     After E.E. purchased more alcohol, ETCITTY drove them all to a park in Shiprock where they continued to talk and drink more alcohol. ETCITTY talked about a prior boyfriend who is now deceased and the conversation became somber.

15.     ETCITTY stated that E.E. then brought up a prior incident when JOHN DOE accidently shot him, and it made everyone uncomfortable because E.E. was intoxicated. ETCITTY drove them all back to the RESIDENCE.

16.     ETCITTY parked her vehicle in front of the RESIDENCE and A.H. went inside. E.E. helped JOHN DOE into his wheelchair and JOHN DOE sat near ETCITTY's driver side window talking.

17.     According to ETCITTY, E.E. went inside the RESIDENCE and brought out a black AK rifle and put it on the roof of JANE DOE's vehicle parked nearby.

18.     ETCITTY said E.E. became angry and walked over to ETCITTY's window and asked ETCITTY if she had ever been shot by her brother (affiant understood this statement to mean that ETCITTY did not understand what it was like to be shot by one's own brother like E.E. was when JOHN DOE accidentally shot him).

19.     ETCITTY said E.E. put his handgun to ECITTY's head and then hit her lip with it. ETCITTY stated E.E. told her she was lucky E.E. did not have any bullets. ECITTY stated she was fearful and struggled with her car keys to start her vehicle.

20.     ETCITTY later stated, at some point, she got out of her vehicle, ran over to JANE DOE's vehicle, and grabbed the AK rifle to prevent E.E. from shooting her with it. According to ETCITTY, JOHN DOE grabbed the AK rifle from ETCITTY as she was trying to put it in her car.

5

21.    ETCITTY stated she observed E.E. go back inside the RESIDENCE and when he came back out, E.E. was loading the handgun he showed ETCITTY earlier.

22.    ETCITTY said she was scared for her life and was trying to drive her car out of there. ETCITTY believed her vehicle was in reverse but could not recall which direction she went. ETCITTY later stated she felt a bump as she was trying to drive away. ETCITTY also stated she may have hit JANE DOE with her car as well as two parked vehicles parked at the RESIDENCE when she was trying to get away.

23.    ETCITTY asked for an attorney when law enforcement inquired about what happened to JOHN DOE.

24.    Agents concluded ETCITTY's interview upon her request for an attorney.

25.    JANE DOE was interviewed by law enforcement at UNMH on August 6, 2024, and again at Encompass Health in Albuquerque on August 19, 2024.

26.    JANE DOE stated she was having a birthday party for her daughter, ETCITTY, at the RESIDENCE in Rattlesnake. JANE DOE's husband, two sons, E.E. and JOHN DOE, as well as E.E.'s girlfriend, A.H, were all there. Everyone was getting along and laughing. ETCITTY, JOHN DOE and E.E. were drinking alcohol. At some point A.H. drove ETCITTY, E.E. and JOHN DOE somewhere and when they returned E.E. and ETCITTY were arguing. JANE DOE went outside to tell E.E. and ETCITTY to stop arguing. ETCITTY was sitting in the driver's seat of her vehicle. JANE DOE believed ETCITTY was intoxicated due to the way she was yelling. ETCITTY did not appear to be fearful just mad. Suddenly, ETCITTY sped forward striking JANE DOE and running over JOHN DOE twice with her vehicle. ETCITTY also hit JANE DOE'S husband's parked truck before speeding off.

27.     JANE DOE did not know what E.E. and ETCITTY were arguing about, and JANE DOE did not see any firearms or hear any gunshots during the incident.

28.     JANE DOE was aware E.E. owned a pistol because E.E. had shown it to her several months prior. However, JANE DOE did not believe E.E. used any firearms during the incident.

29.     JANE DOE sustained a broken pelvis, broken arm, broken ribs, and had a surgery on her knee due to the incident. JANE DOE stated she was in a lot of pain and estimated her pain level was an 8 out 10.

30.     JOHN DOE was interviewed by law enforcement at UNMH on August 6, 2024, and again at Encompass Health in Albuquerque on August 19, 2024.

31.     JOHN DOE stated his sister, ETCITTY ran him over twice outside of the RESIDENCE.

32.     JOHN DOE stated ETCITTY was intoxicated from consuming several shots of vodka and three tall cans of white claws.

33.     JOHN DOE stated ETCITTY was arguing with JOHN DOE's brother E.E. about a family dispute involving ETCITTY's ex-boyfriend. According to JOHN DOE, the argument continued as ETCITTY got into her car, a gold Toyota Camry, to leave. ETCITTY sped up toward and ran JOHN DOE over while he was sitting in his wheelchair. ETCITTY also hit JANE DOE and crashed into JOHN DOE's father's truck. ETCITTY then reversed and ran over JOHN DOE a second time. JOHN DOE showed the interviewer tire marks on his abdomen.

34.     JOHN DOE stated he did not see any firearms or hear any gunshots during the incident.

35.    JOHN DOE believed E.E. owned firearms in the past because E.E. had shown them to JOHE DOE on a video chat. JOHN DOE said is a convicted felon and E.E. knew JOHN DOE could not be around firearms. JOHN DOE did not believe that either E.E. or ETCITTY had a firearm during the incident. JOHN DOE recalled ETCITTY bringing up her ex-boyfriend's firearms during the incident. ETCITTY told JOHN DOE her ex-boyfriend owned an AK rifle and a shotgun.

36.    JOHN DOE sustained a broken pelvis, broken wrist, and broken ribs, due to the incident. JOHN DOE stated he was in a lot of pain, a level eight on a pain scale on one to ten. At the time of the injury JOHN DOE believed he was dying.

37.    On August 8, 2024, A.H. was interviewed by law enforcement. According to A.H., she was hanging out with her boyfriend, E.E., at the RESIDENCE in Rattlesnake when ETCITTY showed up and wanted to celebrate her birthday with her family. JANE DOE, JOHN DOE, ETTCITY, E.E., E.E.'s father, ETCITTY's aunt, L.D., and L.D.'s boyfriend were present. ETCITTY and A.H. went to purchase alcohol for the party and E.E. left to purchase a birthday cake. After the party was over and everyone had eaten, L.D. and her husband left. ETCITTY drove E.E., JOHN DOE, and A.H to go get more alcohol. On their way back, ETCITTY stopped in Shiprock at a park, and they continued to drink alcohol and talk. ETCITTY became emotional while taking about her now deceased ex-boyfriend and wanted to go visit his grave site. A.H. and E.E. wanted to go home instead and ETCITTY became angry. When they arrived back home in Rattlesnake, A.H. went inside but could hear E.E. and ETCITTY still arguing outside.

38.     At some point, A.H. saw JANE DOE got outside to see what was happening. A.H. heard ETCITTY's car screech and saw ETCITTY drive her car forward striking JOHN DOE, JANE DOE, and E.E. with her car.

39.     A.H. observed ETCITTY hit her face on the steering wheel when she crashed into JANE DOE and JANE DOE's husband's vehicles. JOHN DOE had fallen off his wheelchair and was lying on the ground when ETCITTY backed her vehicle over him, after having already hit him when she accelerated forward, before driving off. A.H. became emotional and stated it was "hard to watch".

40.     A.H. did not see any firearms during the incident. A.H. purchased E.E. a handgun for E.E.'s birthday several months prior, but they did not have any more ammunition for it. A.H. did not see E.E. carry the handgun on him that day. A.H. stated no one pointed or threatened anyone with a gun that day. ETCITTY asked to see E.E.'s handgun but A.H. told her no. A.H. believed ETCITTY only knew about E.E.'s handgun because A.H. had mentioned it to her on a previous occasion.

41.     L.D. was interviewed on September 6, 2024. L.D. stated she and her husband were invited to her niece, ETCITTY's, birthday party on August 4, 2024. When L.D. arrived, it was apparent ETCITTY, JOHN DOE, and E.E.  had all been drinking. There were alcohol containers around and everyone was acting weird. ETCITTY's later made a comment to L.D. about her birthday cake saying "Murda" on it. L.D. was unaware if "Murda" was a nickname for ETCITTY. L.D. had taken a photograph[1] of ETCITTY and her birthday cake.

42.     After the party, ETCITTY asked L.D. to stay and drink alcohol with her, but L.D. declined because L.D. was aware the family always fights when they drink alcohol, so L.D. and her husband left to go to Farmington instead.



Photo of Etcitty and her birthday cake.

43.    After the incident, L.D. stated ETCITTY called her and told her E.E. hit
ETCITTY in the mouth with a gun and JOHN DOE had another gun on his lap.

44.    L.D. was not present for the incident and did not see E.E. with any firearms
during the birthday party. L.D. believed there was tension between ETCITTY and E.E. during
the birthday party, due to their excessive drinking.

45.    L.D. later returned to the RESIDENCE on the evening of the incident and
observed a long black gun bag with a zipper on JOHN DOE's bed. L.D. did not see a firearm
because the bag was closed and she did not look inside, but believed the bag was for a rifle.

46.    L.D. is JOHN DOE's caretaker so she is frequently at the RESIDENCE to assist
JOHN DOE. While at the residence on or around September 4, 2024, L.D.  saw the same black
gun bag again under JOHN DOE's bed. The gun bag was closed and L.D. was not sure if it
contained a firearm.

47.    On or around September 9, 2024, L.D. saw the same black gun bag in JOHN
DOE's bedroom. During this occasion, L.D. could see a firearm in the gun back and took a
photograph[2] of the firearm, which he provided to law enforcement.



Photo of firearm and black gun bag

48.    On October 7, 2024, a search warrant was executed by agents at the RESIDENCE in an attempt to locate the firearm observed by L.D.

49.    Upon arrival at the residence, E.E. told agents they would not find any firearms and after conducting a search of the residence, the weapon was not located.

50.    The army green pistol purchased by A.H. for E.E. was voluntarily provided to law enforcement on August 15, 2024, by A.H.

51.    The pistol was confirmed to be a Springfield Hellcat 9mm and was purchased by A.H. on December 22, 2023.

52.    Information provided by ETCITTY indicated E.E. threatened her with and struck her in the lip with an army green pistol believed to be the same weapon as described above. Based on my training and experience it is likely ETCITTY's DNA could be on the Springfield Hellcat 9mm pistol after being struck hard enough to cause an injury to ETCITTY's lip.

53.    At this point in the investigation, investigators have not ruled out the possibility that the Springfield Hellcat 9mm pistol was utilized in the commission of a crime. Said DNA

11

evidence is relevant in context for forensic analysis for comparison to the Springfield Hellcat

9mm pistol to either inculpate or exculpate any contact ETCITTY may have had with the pistol.

Determining whether ETCITTY was hit with the pistol is critical to evaluate whether a crime

occurred and who is responsible.

54.    ETCTTY is an enrolled member of the Navajo Nation.

## **CONCLUSION**

55.    Based on my training, experience, and the facts as set forth in this affidavit,

there is probable cause to believe that violations of 18 U.S.C. § 1153, crimes committed in

Indian Country and 18 U.S.C. § 113(a)(6) assault resulting in serious bodily injury were

committed by ETCITTY and that evidence of such violations will be found on the person of

Miranda ETCITTY, year of birth 1986, in the form of DNA. DNA is relevant and material in

the context of forensic evaluation with regard to establishing ETCITTY's culpability in relation

to the present investigation.

56.    I respectfully request a search warrant be issued to search the person of Miranda

ETCITTY, year of birth 1986, for the purpose of obtaining deoxyribonucleic acid (DNA) to

compare with any DNA found on a Springfield Hellcat 9mm collected as evidence and any

other evidence seized in this matter.

57.    Assistant United States Attorney Jesse Pecoraro reviewed and approved this

affidavit for legal sufficiency to establish probable cause.


Electronically subscribed and telephonically sworn to me on November ___12___,

2024

_____
Lorraine Hardy
Special Agent
Federal Bureau of Investigation

_____
Honorable B. Paul Briones
United States Magistrate Judge

<u>ATTACHMENT A</u>

PERSON TO BE SEARCHED

Miranda ETCITTY, year of birth 1986. She is currently residing at 6703 E Main St.

Farmington, NM 87402 ETCITTY is pictured below.



<u>ATTACHMENT B</u>

PROPERTY TO BE SEIZED BY THE GOVERNMENT

The following material, which constitutes evidence of the commission of a criminal offense, namely violations of 18 U.S.C. § 1153, crimes committed in Indian Country, and 18 U.S.C. § 113(a)(6) assault resulting in serious bodily injury:

1. Your affiant will use buccal swabs to collect DNA from ETCITTY.